IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GRINNELL MUTUAL REINSURANCE COMPANY,**

    Plaintiff,

v.

**PAUL TIMMERMANN,**
**VERONICA TIMMERMANN,**
**LISA LYNN TIMMERMANN,**
**KURT JAMES TIMMERMANN, and**
**JORDAN MICHAEL TIMMERMANN,**
a minor,

    Defendants.                                       Case No. 07-cv-163-DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION & BACKGROUND

Before the Court is Plaintiff's Amended Motion for Summary Judgment (Doc. 46) and supporting memorandum (Doc. 47). An opposing Response (Doc. 48) has been filed by defendants Paul and Veronica Timmermann, as well as an opposing Response (Doc. 51) and supporting memorandum (Doc. 52) filed by defendants Kurt, Lisa and Jordan Timmermann. Plaintiff has filed separate Replies (Docs. 50 & 53) to each of these Responses.

Plaintiff Grinnel Mutual Reinsurance Company ("Grinnell") brought a

two-count declaratory judgment action (Doc. 2) against all Defendants on the basis of diversity jurisdiction, asserting that there is no coverage for any liability of defendants Paul and Veronica Timmermann, who are named insureds in a Grinnell Mutual Reinsurance Company Farm-Guard Policy No. 01Z-252 (the "Farm-Guard Policy") and in an expired Personal Excess Policy No. 0026027790 (the "Excess Policy").

Paul and Veronica Timmermann, husband and wife, are defendants in a lawsuit filed in the Circuit Court of the Fourth Judicial Circuit, Clinton County, Illinois, Case No. 06-L-031, entitled: *Lisa Lynn Timmermann and Kurt James Timmermann, Individually and as Parents and Next Friends of Jordan Michael Timmermann, a Minor v. Paul Timmermann and Veronica Timmermann* (hereinafter the "Underlying Suit"). The Underlying Suit seeks damages for injuries suffered by Jordan Timmermann, a minor, occurring on or about December 5, 2004. Kurt James Timmermann is the son of Paul and Veronica Timmermann. Jordan Michael Timmermann, Kurt's son, is their grandson. Paul and Veronica Timmermann own a farm in Clinton County, Illinois. Both Kurt and his son, Jordan, worked the farm. On December 5, 2004, Jordan was injured working on his grandparents' farm. The Underlying Suit followed.

Paul and Veronica Timmermann tendered the defense of the Underlying Suit to Grinnell. Grinnell is currently defending both Paul and Veronica Timmermann in the Underlying Suit but believes that neither the Farm-Guard nor the Excess Policy provides liability coverage and thus, Grinnell further believes it has

no duty to defend nor indemnify Paul and Veronica Timmermann.[1] The Court, in reviewing the Parties' briefs and the record, as well as analyzing the pertinent case law, finds that summary judgment is not warranted.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))**. The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323)**. In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**. This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))**.

---

[1] Grinnell notified Paul and Veronica Timmerman, via letter dated January 15, 2007, that they had no coverage under the Farm-Guard Policy for the Underlying Suit (Doc. 2, Ex. C).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**. No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50 (citations omitted);** *accord **Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**.

**B.     Analysis**

Grinnell moves for summary judgment on both Counts of its suit for declaratory judgment. It bases its Motion on two grounds: (1) the Excess Policy issued to Paul and Veronica Timmermann was not in effect at the time of Jordan Timmermann's injury on December 5, 2004 as it had expired on August 15, 2004; and (2) the Farm-Guard Policy excludes liability coverage for a bodily injury suffered by an "insured person" and Jordan Timmermann ultimately falls within the definition of an "insured person." Because neither of Defendants' Responses contest the assertion that the Excess Policy was not in effect on December 5, 2004 and thus, does not provide liability coverage for the Underlying Suit, the Court finds Grinnell entitled to summary judgment in this regard. However, all Defendants contest the

assertion that the Farm-Guard Policy does not provide liability coverage and so the Court's analysis will center on this issue.

   1.   **The Farm-Guard Exclusions and Definitions**

Under the Exclusions section of the Farm-Guard Policy, paragraph 17 reads as follows: "We" do not cover "bodily injury" to any "insured person" (Doc. 48, Ex. A, p. 6, ¶ 17). The Farm-Guard Policy defines "We" as "the Company providing this insurance," which is Grinnell (*Id.* at p. 1, ¶ 2). Among the several definitions for "Insured person" are: "you" and "a person living with 'you' and related to 'you' by blood, marriage or adoption" (*Id.* at p. 2, ¶ 9(a) & (b)). "You" has several definitions, two of which are: "the insured named in the Declarations and spouse if living in the same household," and "any additional named insureds and their spouses if living in the same household" (*Id.* at p. 1, ¶ 1(a) & (b)).

Paul and Veronica Timmermann are listed as the "Named Insureds" on the Farm-Guard Policy (Doc. 2, Ex. B, pp. 5-6). None of Defendants contest this. Grinnell next asserts that the Declarations pages also lists Kurt Timmermann as an "Additional Insured" on the Farm-Guard Policy (*Id.*). As an Additional Insured, Grinnell states that Kurt Timmermann is also excluded from liability coverage for any bodily injury he suffers. Further, Grinnell asserts that because Jordan Timmermann, as Kurt Timmermann's son, is related to him by "blood, marriage or adoption" and also resided with him on December 5, 2004, Jordan is considered an "insured person" under the Farm-Guard Policy. As such, Grinnell believes that Jordan Timmermann is excluded from liability coverage for the injuries he suffered

on December 5, 2004.

## 2. Kurt Timmermann as an "Additional Insured"

In their Responses, all Defendants contest Grinnell's assertion that Kurt Timmermann should be considered an "Additional Insured" under the Farm-Guard Policy. Conversely, they argue that despite the fact that the declaration pages list Kurt Timmermann as an Additional Insured under the Farm-Guard Policy, it was never the intent of either Paul or Veronica Timmermann to make him an Additional Insured. Defendants further substantiate this argument with the fact that Kurt Timmermann was not listed as an Additional Insured on Paul and Veronica Timmermann's 2004 application for the Farm-Guard Policy.

The Farm-Guard Policy was initially purchased by Paul and Veronica Timmermann with a starting date of August 15, 1998. They purchased the Policy through their insurance agent Michael Zurliene. The Farm-Guard Policy has a term of three years. At the end of the three-year period, the Timmermanns could apply for a new or modified Farm-Guard Policy for another three-year term. There is no dispute that for the initial term from August 1998 through August 2001, Kurt Timmermann was listed on the Farm-Guard Policy as an Additional Insured with the application identifying his interest in the farm as a "part-time employee."

Paul and Veronica Timmermann chose to renew the Farm-Guard Policy for the period from August 2001 through August 2004. Again, that application listed Kurt Timmermann as an Additional Insured, identifying his interest in the farm as "Paul's son." However, Defendants note that the Farm-Guard Policy application for

the August 2004 through August 2007 period (the "2004 Application") did *not* list Kurt Timmermann as an Additional Insured (*see* Doc. 48, Ex. B, p. 1). Moreover, Defendants argue that Paul Timmermann never expressed a desire to include Kurt Timmermann as an Additional Insured for the August 2004 through August 2007 period. The 2004 Application was signed by both Paul Timmermann and Michael Zurliene on August 11, 2004 (*Id.*).

3. **The 2004 Application Versus the Policy Itself**

The Parties do not dispute the meaning of the Farm-Guard Policy exclusion if Kurt Timmermann is found to be an Additional Insured. Nor is there, in fact, a dispute that Kurt Timmermann is listed as an "Additional Insured" on the declaration pages of the Farm-Guard Policy. In other words, there is no argued ambiguity regarding the language of the Farm-Guard Policy itself. The crux of the matter here is that Kurt Timmermann was listed as an Additional Insured on the Farm-Guard Policy declaration pages, but not on the 2004 Application itself. Thus, the dispute between the Parties centers on whether the 2004 Application or the Farm-Guard Policy controls.

A declaratory judgment action in federal court on the basis of diversity jurisdiction follows the substantive law of the forum state, which, in this case, is Illinois. ***Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007)**. Further, the construction of an insurance policy is a matter of law, ***Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007)**, as are the "rights and obligations

thereunder." ***Crums and Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993) (citations omitted)**.

The only relevant evidence on the record relevant to this issue is the Farm-Guard Application, the Farm-Guard Policy and declaration pages, and the deposition testimony of insurance agent Michael Zurliene. Because the 2004 Application and the declaration pages clearly conflict as to whether Kurt Timmermann was to be named an additional insured on the 2004 Farm-Guard Policy, the Parties also rely upon the deposition testimony of Michael Zurliene. However, his testimony is also conflicting.

Zurliene testified that he is the one who fills out insurance policy applications, as he did for Paul and Veronica's Farm-Guard Policy in 2004 (Doc. 48, Ex. C - Zurliene Dep., 54:10-55:1; 55:17-56:2). He also testified that if an insurance policy does not match what was stated on the policy application, it is "a mistake," because it should reflect what is on the application (*Id*. at 57:12-58:1). Zurliene further admitted it was a mistake that the Farm-Guard Policy declaration pages listed Kurt Timmermann as an Additional Insured when the 2004 Application did not (*Id*. at 58:20-13). However, Zurliene later testified that Paul Timmermann told him to leave the liability coverage and everything the same (*Id*. at 63:21-23), but that Paul Timmermann did not actually tell him to keep everything the same and that he had just assumed that the coverage would remain unchanged from the prior policies (*Id*. at 64:2-23). At best, Zurliene's testimony goes in circles regarding whether he *was* instructed to keep the coverage the same or whether keeping coverage the same

was a mistaken assumption on his part. Obviously, because Defendants contest the notion that Zurliene was instructed to keep Kurt Timmermann on the Farm-Guard Policy as an Additional Insured, this is an existing question of material fact.

Under Illinois law, "[w]hen an insurance applicant gives correct answers to the insurer's agent and the agent fills in the application with incorrect answers, the insurer is estopped from denying its liability even if the application is signed by the applicant." ***Allied American Ins. Co. v. Ayala*, 616 N.E.2d 1349, 1362 (Ill. App. Ct. 1993) (citing *Guter v. Security Benefit Association*, 166 N.E. 521 (1929))**. "The insurer cannot rely on incorrectly recorded answers to assert misrepresentation, even if the insured knows the agent has entered information different from that he provided, where the information is entered pursuant to the agent's advice, suggestion or interpretation" *Id*. **(citing *Logan v. Allstate Life Ins. Co.*, 312 N.E.2d 416 (1974)); *see also Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 849 (Ill. App. Ct. 1998)**.

The instant matter varies slightly from many of the above-cited cases as well as those cited by the Parties in that Zurliene, if Defendants are to be believed, did not insert an incorrect answer into the application, but instead, provided information for the issuance of the Farm-Guard Policy that differed from the information provided on the 2004 Application. Nevertheless, the Court finds the rationale behind the case law remains the same and therefore, applies here. An insurance applicant should be able to assume that the issued policy conforms to the

information provided on the application. See *New York Life Ins. Co. v. Rak*, **173 N.E.2d 603, 607 (Ill. App. Ct. 1961)**. Moreover, Grinnell has not provided evidence that Paul Timmermann was ever asked to review the declaration pages of the Farm-Guard Policy and acknowledge that they were correct. He did, however, sign off on the 2004 Application, which did not list any Additional Insureds. If Paul Timmermann never told Zurliene to "keep the coverage the same" or to list Kurt Timmermann as an Addtional Insured, then the Farm-Guard Policy for the 2004 - 2007 term should not have done so. This question should go to the jury and thus, survives summary judgment.

### 4. Insurable Interest

Defendants Kurt, Lisa and Jordan Timmermann also argue, in their Response, that even if Kurt Timmermann was found to be properly listed as an Additional Insured, a question of material fact remains as to whether he actually had an "insurable interest" in Paul and Veronica Timmermann's farm. From Zurliene's testimony, he was unsure of what, if any, interest Kurt Timmermann had in the subject property of the Farm-Guard Policy in order for it to be insured, other than he worked on the farm and that he was Paul and Veronica's son. The Parties' briefs also do not clearly identify such an interest.

Defendants argue that an insurance policy is invalid to those named insureds (or additional insureds) who lack an insurable interest (Doc. 52, p. 13, citing **Wolfram Partnership, Ltd. v. LaSalle Nat'l Bank**, 765 N.E.2d 1012 (Ill.

**App. Ct. 2001)**). Grinnell replies that the various jurisdictions still disagree about whether the concept of "insurable interest" applies to liability insurance the same way it does to insurance against property loss (Doc. 53, p. 2, citing ***Ohio Farmers Ins. Co., v. Lantz*, 246 F.2d 182, 185 (1957)**). The Court finds that the law cited by Grinnell is accurate and therefore, does not find the issue of whether Kurt Timmermann had an "insurable interest" in the farm to be a question of material fact, but rather, it is irrelevant in the context of a liability insurance.

### III. <u>CONCLUSION</u>

As discussed herein, the Court finds a question of material fact exists regarding whether Paul Timmermann advised his insurance agent, Michael Zurliene, to list Kurt Timmermann as an Additional Insured. Accordingly, Grinnell's Amended Motion for Summary Judgment (Doc. 46) is hereby **DENIED** and Grinnell's initial Motion for Summary Judgment (Doc. 37) is **FOUND AS MOOT** .

**IT IS SO ORDERED**.

Signed this 2nd day of February, 2009.

/s/     *David R Herndon*
**Chief Judge
United States District Court**